IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMMED Q. ISLAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4530 |
| | § | |
| THE RELIABLE LIFE INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant The Reliable Life Insurance Company's Motion for Summary Judgment (Document No. 11). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

I.  Background

Plaintiff Mohammed Q. Islam ("Plaintiff") brings this national origin discrimination case against his former employer, Defendant The Reliable Life Insurance Company ("Reliable"), alleging that Reliable demoted and discharged him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff, who is of Asian origin, was initially employed by Monumental as a sales agent. Document No. 11 ex. A at 47-48. In August 1992, Reliable purchased Monumental and assigned Plaintiff to District 56 in Houston, Texas, which was managed by Albert Durand ("Durand"), a

black male.  <u>Id.</u> at 48-49, 52; Document No. 16 ex. A ¶ 2. Plaintiff worked as an agent in District 56 until 1997, when, upon learning that he did not receive a promotion that he felt he deserved, Plaintiff requested and received from Durand a transfer to District 04, also in Houston.  Document No. 11 ex. A at 53, 56, 65-66, 70.  District 04 was managed by John Overman ("Overman"), who had promised Plaintiff an eventual promotion to assistant manager if Plaintiff transferred to Overman's district.  <u>Id.</u> at 53, 65.  In June 1998, Overman promoted Plaintiff to assistant manager. <u>Id.</u> at 72-73.  According to Plaintiff, he and his staff led the district from 1999 through 2002, although he acknowledges that "at some point Mr. Overman may have mentioned [Plaintiff] needed to improve [his] recruiting."  Document No. 16 ex. A ¶ 3.

In early 2003, Reliable decided to consolidate its various Houston districts due in part to a corporate restructuring and in part to the retirement of Overman.  Document No. 11 ex. A at 96-97. Overman informed the assistant managers that they would not be able to keep their current positions and "were on their own" to locate other positions within the company.  <u>Id.</u> at 101-102.  Thus, Plaintiff called Durand, who was the only district manager with an opening, and asked to return to District 56 as an assistant manager.  <u>Id.</u> at 103-04; Document No. 16 ex. A ¶ 3.  Durand agreed to rehire Plaintiff, and upon returning to work for Durand, Plaintiff was assigned agents with considerable experience, ranging

2

from two-and-a-half years to fifteen years, in the business.  <u>Id.</u> at 103-04, 108-09, 112; in his response brief Plaintiff concedes that "[w]hen Plaintiff started back with Mr. Durand, Plaintiff had good agents working under him."  Document No. 16 at 4.  While working under Durand, Plaintiff alleges that Durand instructed him (1) not to hire foreigners because customers could not understand them, (2) to hire individuals to reflect the customer base, which was primarily African American and Hispanic, and (3) to hire bilingual individuals who would be able to communicate with Spanish-speaking customers.  Document No. 11 ex. A at 126-27, 129; Document No. 16 ex. A ¶ 3.

After Plaintiff's return to District 56, Durand notified the assistant managers that, because the district had become top-heavy--<u>i.e.</u>, there were too many assistant managers relative to the district's size--some of the assistant managers were going to have to be demoted.  Document No. 11 ex. A at 133-34.  Plaintiff had received unsatisfactory evaluations in the areas of agent recruitment and supervision while working under Overman, and Plaintiff's performance in these areas did not improve after his transfer back to District 56.  <i>See</i> <u>id.</u> at 131-33.  Durand's first evaluation of Plaintiff was for the third quarter of 2003, and Durand gave Plaintiff unsatisfactory marks in areas including agent recruitment, agent supervision, and agent increase.  <u>Id.</u> at 134-36, 188-89; Document No. 16 ex. A ¶ 3.  Durand informed Plaintiff that

3

if his performance in these areas did not improve in the fourth quarter he would be demoted. Document No. 11 ex. A at 189. Despite Durand's admonition, Plaintiff's performance did not improve. Id. at 189-90. His fourth quarter evaluation reflected that his performance remained unsatisfactory in the areas of agent recruitment and agent supervision, as well as in various other performance categories, including earnings. Id. ex. A at 189-92; ex. J.

Based on Plaintiff's performance during the third and fourth quarters, Durand met with Plaintiff to inform him that he was going to be demoted to sales agent. Document No. 11 ex. A at 137, 139-40, 144; Document No. 16 ex. A ¶ 4. Plaintiff felt that the demotion was unfair because he believed that he was performing better than two other assistant managers who were not demoted--Dan Garza ("Garza") and Bob Kirkland ("Kirkland"). Document No. 11 ex. A at 141-43; Document No. 16 ex. A ¶ 4. Durand offered Plaintiff his choice of areas in which to work as agent, but Plaintiff requested time to consider his options. Document No. 11 ex. A at 144-45; Document No. 16 ex. A ¶ 4.[1] Durand said he would get back with Plaintiff in a couple of weeks. Document No. 11 ex. A at 144-45.

---

[1] Durand later offered Plaintiff the option of transferring to another district. See Document No. 11 ex. A at 145.

4

On January 26, 2004, Durand called Plaintiff to see what he had decided. Id. at 145. Plaintiff had not yet decided, so he requested additional time--two weeks of vacation--in which to make a decision. Id. at 146. When Durand denied Plaintiff's request on the ground that company policy prohibited vacations in January, Plaintiff requested that he be given four weeks of vacation in February, which Durand also denied. Id. at 146-48, 151.[2] The following day, Plaintiff wrote a letter addressed to Reliable's president and copied to others in Reliable's management, in which he stated that he believed Durand was discriminating against him, but did not attribute the alleged discrimination to his national origin. Id. ex. C.

After the January 26, 2004, meeting, Plaintiff ceased coming to work except to drop off paperwork. Id. ex. A at 148-49. On February 2, 2004, Durand wrote a letter to Plaintiff stating that he had not heard from Plaintiff since the January 26 meeting and instructing Plaintiff to contact him immediately. Id. at 159-60; see also ex. D. Plaintiff responded by letter dated February 5, 2004, in which he stated that he felt his demotion was unfair and indicated that he was not returning to work until the "Home office" addressed his complaints. Id. ex. E. The next day, Reliable's Vice President of Human Relations Ken Oehler ("Oehler") called

---

[2] Durand evidently did grant Plaintiff one week of vacation to begin February 2, 2004, and end February 6, 2004. See Document No. 11 exs. G-H, K.

Plaintiff to discuss the situation.  <u>Id.</u> ex. A at 149-50; ex. F. Oehler assured Plaintiff that his complaints were being investigated objectively and impartially, but Oehler informed Plaintiff that he needed to return to work as an agent when his approved leave ended.  <u>Id.</u> ex. F; ex. H.  Oehler further informed Plaintiff that if he did not return to work on February 9, 2004, his absence would be construed as a resignation.  <u>Id.</u> ex. A at 149-51; ex. H.  Instead of returning to work, Plaintiff wrote a letter to Oehler dated February 8, 2004, stating, "I do not think this [returning to work] is the appropriate next step for me."  <u>Id.</u> ex. F.  When Plaintiff failed to show up for work on February 9, 2004, Durand FedExed instructions to Plaintiff, which Plaintiff received the following day, to return to work immediately or he would be deemed to have resigned.  <u>Id.</u> ex. A at 155-56; ex. K. Plaintiff responded by faxing to Durand a letter stating that he was not going to return to work until his grievance was settled. <u>Id.</u> ex. G.  Thus, on February 12, 2004, Oehler sent to Plaintiff a letter informing him that because of his refusal to return to work in defiance of his superiors' unequivocal orders, his employment was being terminated retroactive to February 6, 2004.  <u>Id.</u> ex. H.

In his Complaint, Plaintiff alleges that his demotion and subsequent termination were discriminatory on account of his national origin.  *See* Document No. 2.  Defendant moves for summary judgment on Plaintiff's claims, arguing that: (1) even if Plaintiff

makes out a prima facie case of discriminatory demotion, he cannot raise a fact issue that Reliable's legitimate, non-discriminatory reason for its decision to demote him is a pretext for national origin discrimination, or that his national origin was a motivating factor for the demotion; and (2) the evidence is that Plaintiff resigned, but even if his separation from the company could constitute a termination, he cannot raise a fact issue that Reliable's legitimate, non-discriminatory reason for its decision to discharge him is a pretext for national origin discrimination, or that his national origin motivated the discharge.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See id. at 2553-54.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and

unsubstantiated assertions that a fact issue exists will not suffice.  *See* Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden.  *See* Anderson, 106 S. Ct. at 2513-14.  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id. (citing Anderson, 106 S. Ct. at 2511).  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

III. Discussion

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's national origin. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). Because Plaintiff presents no direct evidence of discrimination, his claims are analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id. Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. Id. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's

protected characteristic (mixed-motive alternative).  <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004).

A. <u>Demotion</u>

To establish a prima facie case of discrimination on his demotion claim, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his assistant manager position; (3) he was demoted; and (4) others outside his protected class were treated more favorably.  *See* <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 282 (5th Cir. 2004); <u>Okoye v. Univ. of Tex. Houston Health Science Center</u>, 245 F.3d 507, 512-513 (5th Cir. 2001). Reliable contends that it is doubtful that Plaintiff can proffer any evidence in support of the fourth element of the prima facie case--<u>i.e.</u>, evidence that others outside Plaintiff's protected class were treated more favorably.  *See* Document No. 11 at 14, n.4. Nonetheless, Reliable argues, even if Plaintiff were able to present a prima facie case, Reliable has produced a legitimate, non-discriminatory reason for Plaintiff's demotion--<u>i.e.</u>, the need to reduce the number of assistant managers in District 56 coupled with what Durand perceived to be Plaintiff's deficient job performance--which Plaintiff cannot rebut.  <u>Id.</u> at 14.

Plaintiff does not directly challenge Durand's assessment of his job performance.  *See* Document No. 16 at 4; *see also* Document No. 11 ex. A at 134-36, 188-91; ex. J.  Instead, Plaintiff claims

10

that he was performing better than Garza and Kirkland but was nevertheless demoted.  *See* Document No. 16 at 6; ex. A ¶ 4. However, Plaintiff fails to offer any factual basis in support of this claim.  Although Plaintiff avers in his affidavit that Garza and Kirkland were performing "well below" Plaintiff "based on agent recruiting, retention and new business," *see* Document No. 16 ex. A ¶ 4, Plaintiff conceded in his deposition that he has never reviewed Garza's or Kirkland's performance evaluations or productivity numbers, *see* Document No. 11 ex. A at 141-42. Plaintiff's subjective belief that he was performing better than Garza and Kirkland is insufficient to create a genuine issue of material fact issue.  *See* <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1429-30 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. . . . It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing adequate non-discriminatory reason."); *see also* <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 610 (5th Cir. 2005) (plaintiff's subjective belief of discrimination, no matter how genuinely held, is not sufficient evidence of pretext).

   Plaintiff also claims that Durand caused Plaintiff's poor job performance by assigning Plaintiff an "unstable" group of agents in

an attempt to "create a situation to justify the termination of Plaintiff on performance grounds." Document No. 20 at 4-5. This allegation, without more, does not give rise to an inference of national origin discrimination. Plaintiff does not identify any non-Asian assistant manager who was assigned better agents, nor does he offer any evidence from which it could be inferred that Durand allocated to Plaintiff a disproportionately inept group of agents in comparison to the agents Durand allocated to non-Asian assistant managers. Thus, Plaintiff has failed to raise so much as a genuine issue of material fact that Durand's agent assignments were discriminatory based on Plaintiff's national origin.

Plaintiff next argues that "Durand can also be shown to be hostile toward foreigners based on his comments about not hiring foreigners and yelling at agents for trying to do so." Document No. 16 at 5. However, the fact that Durand both hired and demoted Plaintiff gives rise to an inference that Plaintiff's demotion was *not* motivated by discriminatory intent, which Plaintiff does not rebut. *See* Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) (discussing the "same actor" inference).[3] Moreover, although

---

[3] Plaintiff suggests that the same actor inference is inapplicable because Durand did not "hire" Plaintiff but rather authorized Plaintiff's transfer back to Durand's district. *See* Document No. 20 at 4. As Plaintiff concedes, however, this is a "distinction without a difference," id., because the summary judgment evidence is that Durand was under no obligation to approve Plaintiff's transfer. Moreover, although Plaintiff speculates that Durand rehired Plaintiff simply to discriminate against him on account of his national origin, this assertion is unsupported by

the instructions that Durand gave to Plaintiff regarding who and who not to hire as sales agents may well be evidence of discriminatory hiring practices, they are not evidence that Durand's decision to demote Plaintiff to sales agent was discriminatory.  In sum, because Plaintiff does not raise so much as a genuine issue of material fact that Reliable's stated reason for his demotion was merely a pretext for discrimination or that his national origin was a motivating factor in his demotion, Reliable is entitled to summary judgment on Plaintiff's demotion claim.

B.   <u>Discharge</u>

To establish a prima facie case of discrimination on his discharge claim, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was discharged; and (4) he was replaced by someone outside the protected class, or others outside the protected class who were similarly situated were not terminated or otherwise were treated more favorably.  *See* <u>Wheeler v. BL Dev. Corp.</u>, 415 F.3d 399, 405

---

the evidence and runs counter to the very logic behind the same actor inference.  *See* <u>Brown</u>, 82 F.3d at 658 ("'[C]laims that employer animus exists in termination but not in hiring seem irrational.'  From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'") (quoting <u>Proud v. Stone</u>, 945 F.2d 796, 797 (4th Cir. 1991)).

(5th Cir. 2005); Okoye, 245 F.3d at 512-13; Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).  Reliable contends that Plaintiff cannot establish a prima facie case because he was not terminated but rather abandoned his position.  *See* Document No. 11 at 23-24.  In response, Plaintiff suggests that even if he was not terminated, his separation from Reliable constitutes a constructive discharge.  *See* Document No. 16 at 7.  To establish a constructive discharge, a plaintiff must demonstrate that his working conditions were so intolerable that a reasonable employee would feel compelled to resign.  Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997).  Plaintiff offers no evidence, let alone evidence sufficient to raise a genuine issue of material fact, that a reasonable employee in his position would have felt compelled to resign, and Plaintiff's constructive discharge claim fails as a result.

Even assuming he was terminated or constructively discharged, however, Plaintiff has identified no summary judgment evidence giving rise to a genuine issue of material fact that others outside his protected class were treated more favorably; that Reliable's legitimate, non-discriminatory reason for his termination--namely, his refusal to follow his superiors' instructions and return to work--is not true but is instead a pretext for discrimination; or that his termination was otherwise motivated by his national

14

origin. Accordingly, Reliable is also entitled to summary judgment on Plaintiff's discriminatory discharge claim.

IV.   <u>Order</u>

Based on the foregoing, it is

ORDERED that The Reliable Life Insurance Company's Motion for Summary Judgment (Document No. 11) is GRANTED, and Plaintiff Mohammed Q. Islam's claims are DISMISSED.

The Clerk will enter this Order and send a copy to all parties of record.

SIGNED at Houston, Texas on this 26th day of July, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE